## LYNN *v.* NEW ENGLAND MORTGAGE SECURITY COMPANY.

A plaintiff who causes, under an execution in his favor, a sale of property by an officer authorized to sell, is, as against a *bona fide* purchaser at such sale (except for the purpose of maintaining a petition to set the sale aside, founded upon facts equitably entitling him to such relief), estopped to deny either the validity of the process, the regularity of its issue, or the lawfulness of the sale.

May 19, 1896. Argued at the last term.

Ejectment. Before Judge Milner. Whitfield superior court. April term, 1895.

In March, 1886, Ammons borrowed $200 from Flint, giving his note therefor, together with a deed as security, conveying 100 acres of land from the west side of lot 140 in Whitfield county. The note and deed were transferred by Flint to the New England Mortgage Security Company, the plaintiff. In March, 1893, plaintiff caused an attachment to be issued against Ammons in Gwinnett county for $200, besides interest, on the ground that Ammons resided out of the State. The sheriff of Whitfield county levied the attachment on the land described in the security deed, and afterwards judgment was rendered in the attachment proceeding against 100 acres of land from the west side of

lot of land 190 in Whitfield county, this being the land described in the declaration in attachment. Upon this judgment execution issued from Gwinnett superior court, which execution appeared on its face to be general, and then special against 100 acres of land from the west side of lot 190 in Whitfield county; and upon it was an entry of levy by the sheriff of that county, on 100 acres of land from the west side of lot 140 in Whitfield county. Upon the execution was also an entry by the sheriff, that after legal advertisement the land was sold to the highest bidder before the court-house door in Whitfield county on the first Tuesday in May, 1893, within the legal hours of sale, when it was bid off by W. C. Martin and T. R. Jones for $29, which amount having been paid by them to the sheriff, he executed to them a deed to the land levied on, and after paying certain costs, credited the sum of $22.88 on the *fi. fa.* May 19, 1893; the sheriff's deed to them bearing the same date, and reciting that the land was sold as the property of Ammons by virtue of a *fi. fa.* from Gwinnett superior court in favor of the plaintiff against Ammons. Afterwards ejectment was brought by plaintiff against J. C. Lynn, who holds the land in question (that is 100 acres from the west side of lot 140 in Whitfield county) under Martin and Jones. At the trial the facts already stated appeared, and it was admitted that Ammons was in possession of the land and had been for several years when he made the deed to Flint. It further appeared, that before the levy on the land was made under the execution the plaintiff executed and filed a deed to Ammons for the purpose of enforcing a lien on the land. Trammell Starr testified, that just before the first Tuesday in May, 1893, Simmons, plaintiff's attorney, wrote him to attend the sheriff's sale on that day and bid off the land for plaintiff, which he forgot to do. A day or so after the sale, he learned that the land was sold by the sheriff, and immediately went to Martin and told him of his position

in the matter and asked him to give witness his bid and he would pay the bid and whatever was right. Martin stated that he would think about it and let witness know, that he had not paid his bid for the land to the sheriff. A day or so later witness had another conference with Martin, offering to take Martin's bid for the land, but Martin refused. The third time he talked with Martin and told him he had found the sheriff's sale was illegal and the sheriff's title not worth anything, but that he would still take the bid; and Martin still refused. Martin testified that when the sheriff was offering the land for sale he examined the *fi. fa.* under which the sale was being made, and saw that it was general on its face, and also special against part of lot 190. He bid on the land levied upon, and it was knocked off to him. He told the sheriff to call at his office and make deed, and he would pay the bid. The bid was for himself and partner, T. R. Jones, and was paid a few days later, and the deed made to him and Jones. When Starr first called upon him, he told Starr that he had bid in the land for himself and Jones, and would see Jones and let him know about the matter. When he again called, witness did not tell him whether he would or would not give him his bid, but said he would see further about it. The third time Starr spoke to him and told him he would not give five cents for the title he got at the sheriff's sale, and at that time witness and Jones had agreed to turn over their bid to Starr. This ended the matter, and witness heard nothing more about it until this suit was brought. One Parker testified that the land in question was worth $300.

The court directed a verdict for the plaintiff, and defendant excepted.

*R. J. & J. McCamy* and *Jones & Martin*, for plaintiff in error. *McCutchen & Shumate, Maddox & Starr* and *Anderson, Felder & Davis*, contra.

Atkinson, Justice.

The facts are stated in the official report.

1. The question in this case turns, not upon the validity of the sheriff's sale of lot of land 140 under an execution which should properly have been issued only against lot 190, but upon whether the plaintiff under the facts of the present case can make that question. It will be seen that the attachment declaration described the property as being lot number 190. There was no such service, it is true, upon the defendant in the attachment proceeding as would have authorized a general judgment against him, but there was a special judgment against lot number 190. The plaintiff in execution, however, caused an execution to issue which did not follow the judgment, but was general against the defendant, and special against the property levied upon under the attachment. · Under the execution thus issued, he caused the lot of land in controversy to be levied upon as the property of the defendant in execution. It was regularly advertised and brought to sale; the purchaser attended that sale and bought the land; and we think that the plaintiff in attachment, having itself been the author of these proceedings, is estopped to deny the validity of the sale. Whatever may have been the rights of other people to make the question that the sale was void, and though the purchaser at the sheriff's sale must, as a general rule, look to the judgment as well as to the execution in order to ascertain the authority of the sheriff to sell, yet this rule applies only in favor of those persons who have not by their conduct contributed to bring about the illegal sale. As against this plaintiff in execution, whose process was moving to subject the property, and in response to whose invitation this purchaser appeared, the purchaser had the right to believe that the execution was what it purported to be—a general execution, and properly levied upon the property in controversy as the property of the defendant. We think, therefore, that the plaintiff, after

having brought about such a condition of affairs, was estopped afterwards to sue in ejectment upon its deed, and was not authorized to recover upon proof of its own mistake in the premises.   If the sale were illegal or void for· any reason which it could set up, it would be competent for it, in the proper proceeding, to move to set it aside; but no principle is better settled than that where one by his conduct induces another to act to his prejudice, the wrong-doer is estopped to set up his own unlawful conduct as against the interests of the person injured.

We are persuaded, therefore, that the judgment directing a verdict in favor of the plaintiff was error, and it is accordingly                                            *Reversed.*